Filed 6/15/22

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| D.D., a Minor, etc., et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>DAVID PITCHER,<br><br>    Defendant and Respondent. | F080947<br><br>(Super. Ct. No. BCV-17-100760)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. David R. Lampe, Judge.

Rodriguez & Associates, Noah J. Moss for Plaintiffs and Appellants.

Law Offices of Raquel Birch and Tomas J. Ross; Dentons US, Michael Barnes and David Simonton for Defendant and Respondent.

-ooOoo-

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I.A., I.C., I.D., and II. of the Discussion.

Plaintiff D.D., a minor, by and through his guardian ad litem, Carlos M., appeals from a judgment entered after a jury trial, and from an order denying his motion for a new trial. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 5, 2017, D.D.'s guardian ad litem filed suit against David Pitcher and his spouse, Heather Kann, (collectively, defendants) for damages resulting from personal injuries suffered by D.D. in connection with a bicycle accident that occurred on February 22, 2016, at defendants' residence in Bakersfield, California. D.D. was six years old at the time of the incident.

In his complaint, D.D. alleged causes of action for general negligence and premises liability. D.D. alleged, in part: "As a result of [Pitcher]'s negligence, [D.D.] was struck and run over by a bicycle, thereby causing the injuries and damages complained of herein." On August 23, 2018, the cause of action for premises liability was "[r]emov[ed]" (italics omitted) from the complaint and Kann was "[r]emoved" as a defendant.

Trial commenced on November 18, 2019. During their respective trial testimonies, D.D. and Pitcher gave different accounts of how the bicycle accident occurred. D.D. testified he had been riding his neighbor's bicycle, became tired, and decided to rest on Pitcher's lawn. He was "sitting down at a tree," with his helmet on and his leg "sticking out." He had been sitting there for approximately five minutes when he saw Pitcher's son and then Pitcher approaching him. Pitcher was riding a bicycle. D.D. testified Pitcher rode across the grass and the wheel of his bike ran across D.D.'s left leg. As a result, D.D. suffered a broken leg.

On cross-examination, D.D. acknowledged that, at deposition, he originally testified he was "flat on [his] back with [his] head against the tree" and that, later in the deposition, he testified he was "sitting on [his] bottom with [his] back against the tree." At trial, he confirmed he was not lying on his back.

2.

D.D. also acknowledged that, at deposition, he testified he was facing his neighbor's house (i.e., that of Mayra A.[1]) situated to the east of Pitcher's home, and that he was not facing Pitcher's house. At trial, he clarified his body was facing north toward Pitcher's home but his head was turned towards Mayra's house.

Defense counsel commented, "at your deposition you told me you didn't see . . . Pitcher," to which D.D. responded, "No, because look, I was looking over there for a little while and then like facing forward. And then when I heard a noise before I didn't, I looked over there and I saw [Pitcher's] son and [Pitcher] racing." Defense counsel read from D.D.'s deposition testimony in which D.D. testified he heard Pitcher and his son laughing, concluded they were racing, thought they were on the street but did not know they were on the sidewalk, and did not see them.

Pitcher testified he, his wife, and their son had gone for a bike ride on the day in question. On their return home, Pitcher was riding on the sidewalk at approximately 10 miles per hour. His son was ahead of him and his wife was behind him. They were traveling east as they approached their home on the north side of the street. He testified his son cut across their grass to get to their driveway and he did the same. As he made the turn, he saw D.D. dart between two cars and ride onto defendants' property. Pitcher had only a split second to react. He grabbed his brakes but realized he was not going to be able to stop. He tried to "bail off" the bicycle but was still on it when he and D.D. collided. The majority of his weight was still on the bike when the collision occurred. He testified the collision occurred on his driveway approximately a foot off of his grass. D.D., still on his bike, fell to his right toward the remainder of the driveway. Pitcher was unsure if his bicycle hit D.D.'s leg or D.D.'s bicycle. His bicycle landed atop D.D.'s bicycle. Pitcher did not contest that the collision resulted in D.D.'s broken leg.

---

[1] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

Additional testimony was given by the orthopedic surgeon who treated D.D., Pitcher's biomechanical and bioengineering expert, and several percipient witnesses. To the extent relevant, their testimonies will be discussed in later sections of this opinion.

The jury determined, by special verdict, that Pitcher was not negligent. Judgment was entered in favor of Pitcher and D.D. took nothing by way of his complaint.

## DISCUSSION

D.D. challenges the trial court's rulings on three motions in limine. The first motion in limine sought permission for D.D.'s counsel to give a brief opening statement prior to voir dire questioning. The remaining two motions sought to exclude testimony from two witnesses. D.D. also challenges the court's denial of his motion for a new trial. We discuss those issues below.

## I.     MOTIONS IN LIMINE

### A.     Standard of Review[*]

" 'Generally, where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the proper decision for that of the trial judge. The trial court's exercise of discretion will not be disturbed on appeal in the absence of a clear showing of abuse, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice. [Citations.]' [Citation.] ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." ' " (*Brawley v. J.C. Interiors, Inc.* (2008) 161 Cal.App.4th 1126, 1137.)

"Like many evidentiary rulings, orders on motions in limine are generally reviewed for abuse of discretion." (*McMillin Companies, LLC v. American Safety Indemnity Co.* (2015) 233 Cal.App.4th 518, 529.) Similarly, the abuse of discretion standard applies to a " 'trial court's conduct of the voir dire of prospective jurors.' " (*Alcazar v. Los Angeles Unified School Dist.* (2018) 29 Cal.App.5th 86, 94 (*Alcazar*).)

---

[*] See footnote, *ante*, page 1.

4.

### B. Motion In Limine No. 1 (Brief Opening Statement)

#### 1. The Hearing on Motion In Limine No. 1.

In his motion in limine No. 1, D.D.'s counsel requested permission to make a brief opening statement prior to voir dire questioning. Defense counsel opposed the motion as "unnecessary," "a waste of time," and argued it "might precondition the jury."

The trial court granted the motion on the following conditions: "It must be written verbatim, exchanged with counsel and filed with the Court. It must be less than 250 words and read to the jury verbatim. . . . [¶] . . . [¶] . . . Exchange it, give to me, and I'll consider it. But that's why I want it written out. Because I don't want the first thing that the jury hears is an objection and a sidebar." The court stated, "You can read it to the jury if it's approved, if I've approved it. But I'll hear any objections before either counsel read their [brief] opening."

D.D.'s counsel submitted a brief opening statement to the trial court which read: "Brutal honesty. Brutal honesty is something I'm going to ask each one of you for when we get to talk to each other. So it's only fair that I start by being brutally honest with you. [¶] I'm here because of a lawsuit by one neighbor against another. My client, [D.D.], was on the Defendants' property at the time of his injuries. [D.D.] was six years old. . . . Pitcher . . . was 42. [¶] There's a dispute about how [D.D.] was injured. [¶] We've sued [Pitcher] for negligence. We're going to ask you to sign off on a money verdict compensating [D.D.] for a broken leg after we prove our case. [¶] Brutal honesty. Does it turn you off, hearing about a lawsuit by one neighbor against another? Maybe you'd like to hear a little more. [¶] The impact broke both the tibia and fibula of [D.D.'s] left leg. He didn't need surgery. He missed some school. When he returned to school, [D.D.] went back in a wheelchair. The broken bones in his leg had to be reset, it took months to heal. [¶] We're blaming [Pitcher] for this. We're going to ask for money for physical pain, fear, physical impairment, and humiliation. [¶] Should I be afraid of having you as a juror on this case? [¶] I believe in a fair fight. I'm looking for twelve

5.

people who do as well. [¶] So thank you for listening. Please hold on to what you feel inside and ask yourselves with brutal honesty if you can give us a fair fight." (Italics omitted.)

The trial court did not approve the brief opening statement. The court explained: "I'm going to sustain the objection to this [brief] opening. It contains matters . . . that are properly the subject of voir dire, but—for instance, it refers to brutal honesty about brutal honesty being something that counsel wants to hear from the jurors. That's all appropriate for voir dire but not for a [brief] opening statement. It tends to be argumentative. It says we're blaming [Pitcher] for this. This is all—tends toward argument, so I'm going to sustain the objection to this [brief] opening statement. . . . And I think the jury has heard the facts of the case from my statement."

When D.D.'s counsel asked for an opportunity to edit his brief opening statement, the trial court stated, "Not in the time available. I just think this can all be—. . . you're really going to have the opportunity to do exactly what's in that [brief] opening statement as soon as you stand up to conduct your voir dire." The court continued, "I'll announce you can begin your voir dire and you're going to tell the jury you want brutal honesty from them and that this is a case about suing for damages and—all that is properly the subject of voir dire. I just don't want to characterize it as an opening statement."

### 2. Issues Raised on Appeal.

D.D. contends the trial court violated the plain language, as well as the "purpose and spirit," of Code of Civil Procedure section 222.5 by not allowing his counsel to give a brief opening statement prior to voir dire questioning.[2] D.D. also contends the court's restrictions on voir dire were arbitrary and unreasonable.

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise noted.

6.

### *3. Section 222.5 and Its Legislative History.*

"The 'interpretation of governing statutes is decided de novo by the appellate court.' [Citation.] 'When we construe a statute, our " ' "fundamental task . . ." ' . . . ' "is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." ' " ' " (*Alcazar*, *supra*, 29 Cal.App.5th at p. 94.)

Section 222.5 provides, in relevant part: "Upon the request of a party, the trial judge *shall* allow a brief opening statement by counsel for each party prior to the commencement of the oral questioning phase of the voir dire process." (*Id.*, subd. (d), italics added.) The provision was enacted as an amendment to section 222.5, and went into effect on January 1, 2018. (Sen. Bill No. 658 (2017–2018 Reg. Sess.) (Sen. Bill No. 658); Stats. 2017, ch. 337, § 1, approved Sept. 27, 2017.) Prior to that amendment, the relevant provision of section 222.5 read, "The trial judge *should* allow a brief opening statement by counsel for each party prior to the commencement of the oral questioning phase of the voir dire process." (Former section 222.5, italics added; Assem. Bill No. 1403 (2011–2012 Reg. Sess.); Stats. 2011, ch. 409, § 1, approved Oct. 2, 2011, eff. Jan. 1, 2012.)

"The word 'shall' is ordinarily 'used in laws, regulations, or directives to express what is mandatory.' " (*Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 133.) "However, justice is not the slave of grammar, and 'shall' has sometimes been judicially construed as directory[3] or permissive." (*Id.* at p. 134.)

In analyzing Senate Bill No. 658, the Senate Rules Committee described amendments to section 222.5, as follows: "This bill . . . amends [s]ection 222.5 by adjusting a handful of advisory ('should') provisions and making them mandatory."

---

[3] A "directory" provision is "[a] provision in a statute . . . which is a mere direction or instruction of no obligatory force, and involving no invalidating consequence for its disregard, as opposed to an imperative or mandatory provision, which must be followed." (Black's Law Dict. (4th ed. 1968 rev.) p. 547, col. 2.)

7.

(Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 658 (2017–2018 Reg. Sess.) as amended Aug. 22, 2017, p. 5.) "[T]his bill seeks to find the proper balance in the courtroom for ideal voir dire practices. On one side of the balance, the court must be granted a certain level of discretion in guiding the proper questioning of prospective jurors in a civil trial and in controlling the judge's courtroom. On the other hand, counsel for the parties must be given the appropriate leeway to conduct thorough and meaningful voir dire." (*Id.* at p. 7.) The analysis provides several examples of how the amendments limit the trial court's discretion through the use of the term "shall" but makes no mention of the provision concerning brief opening statements. (*Ibid.*)

Another legislative summary of Senate Bill No. 658 stated the bill "[c]larifies that a trial judge should allow a brief opening statement by counsel for each party prior to the commencement of the oral questioning phase of the voir dire process upon the request of a party." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 658 (2017–2018 Reg. Sess.) as amended Aug. 21, 2017, p. 2, par. 11.) "After [the judge asks standard preliminary questions], counsel for each party may provide a brief opening statement (if allowed by the judge)." (*Id.* at p. 4.) These same statements were included in an earlier analysis provided by the Assembly Committee on the Judiciary, which added, "this bill clarifies that counsel has an affirmative duty to request the option of making an opening statement before a court will determine whether the opening statement will be allowed or not." (Assem. Com. on Judiciary, Analysis of Sen. Bill. No. 658 (2017–2018 Reg. Sess.) July 18, 2017, p. 8 [proposed amendment].)

### 4. *The Trial Court Had Discretion to Restrict the Content of the Proposed Brief Opening Statement.*

" '[I]t is not "a function of the examination of prospective jurors to educate the jury panel to the particular facts of the case, to compel the jurors to commit themselves to vote a particular way, to prejudice the jury for or against a particular party, to argue the case, to indoctrinate the jury, or to instruct the jury in matters of law." ' " (*Alcazar*,

8.

*supra*, 29 Cal.App.5th at p. 97, italics omitted.)  A trial court has discretion "to limit the amount of case-specific facts the parties could put before the prospective jurors either through [brief ]opening statements and/or their questioning."  (*Ibid.*)

Alcazar was decided under the version of section 222.5 in effect immediately prior to 2018.  (*Alcazar*, *supra*, 29 Cal.App.5th at p. 96, fn. 3.)  It determined a trial court's discretion to restrict content in brief opening statements was preserved by language of the statute which provided the " 'scope of the examination conducted by counsel shall be within reasonable limits prescribed by the trial judge in the judge's sound discretion.' " (*Id.* at p. 98, italics omitted.)  Notably, the current version of section 222.5 retains nearly identical language.  (§ 222.5, subd. (b)(1) ["The scope of the examination conducted by counsel shall be within reasonable limits prescribed by the trial judge in the judge's sound discretion subject to the provisions of this chapter."].)  We conclude a trial court has discretion to restrict the content of a brief opening statement.  Our conclusion is consistent with the legislative history of section 222.5 which, despite use of the phrase "shall allow a brief opening statement" (*id*., subd. (d)), indicates the trial judge retains the discretion to allow or disallow a brief opening statement if it contains objectionable matter.  In so concluding, we also observe the maxim that statutes should be "construed so as to avoid absurd or unreasonable results."  (*Shephard v. Loyola Marymount Univ*. (2002) 102 Cal.App.4th 837, 846.)  Were we to conclude a trial court lacks such discretion, we would open the door to abuse of the litigation process and potentially jeopardize parties' rights to a fair trial.

D.D. does not challenge or address the trial court's evidentiary ruling that the brief opening statement was argumentative.  Accordingly, we accept the trial court's determination.  (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 (*Salas*) [failure to challenge evidentiary ruling and to support challenge "with reasoned argument and citations to authority" results in a forfeiture].)  Because a court

9.

retains discretion to reject improper content in a brief opening statement, the proper exercise of such discretion does not violate either the spirit or purpose of section 222.5.

### 5. *Additional Claims of Error as to Motion In Limine No. 1 are Rejected.*

D.D. makes a number of additional claims of error concerning the trial court's ruling on motion in limine No. 1. Specifically, D.D. contends the trial court's procedures violated subdivision (b)(1) of section 222.5, which provides a court shall permit voir dire examination "without requiring prior submission of the questions unless a particular counsel engages in improper questioning." The record does not show the court required counsel to submit voir dire questions before examining the jury panel and D.D. provides no cogent argument as to why this provision applies to brief opening statements. Accordingly, we reject this claim of error.

D.D. also contends the trial court's voir dire procedure was arbitrary and unreasonable. He argues the court's procedure was not contained in a standing trial order or Rule of Court and that the time limits imposed by the court were arbitrary. D.D. points to no authority suggesting the court's procedure in managing the voir dire process must be set forth in writing. Accordingly, we reject the contention. (See *Salas*, *supra*, 198 Cal.App.4th at p. 1074 [claim of error forfeited upon failure to cite authority].) We likewise reject the contention the time limits set by the court were arbitrary. The jury panel was assembled and the voir dire process was underway. The court was within its authority to ensure the process continued without unnecessary delay and undue inconvenience to the jury panel. (See *Wesson v. Staples the Office Superstore, LLC* (2021) 68 Cal.App.5th 746, 766 ["[C]ourts have inherent authority to manage litigation with the aim of protecting the parties' rights and the courts' ability to function."].)

### 6. *D.D. Was Not Prejudiced By The Trial Court's Decision Not to Allow the Brief Opening Statement.*

"No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for

any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) In order to obtain a reversal of the judgment, an appellant bears the burden of demonstrating not only that the trial court committed error but also that the error was prejudicial. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 455 (*Schwartz*).) "Prejudice is not presumed." (*Ibid.*)

In determining whether D.D. was prejudiced by the trial court's ruling, we ask whether it " 'is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) Reasonable probability " 'does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.' " (*Ibid.*)

D.D. claims he was prejudiced because "[t]he end result [of the trial court's ruling] was a cumbersome voir dire wherein the trial judge, due to juror confusion, had to read and re-read the neutral [s]tatement of the [c]ase on several occasions during attorney questioning" and "several of the [prospective] jurors expressed confusion over the process and an unwillingness to participate until hearing something about the facts of the case." He goes on to state that "these errors of law and irregularities compromised jury selection to such an extent as to result in a miscarriage of justice."

D.D. cites to only a single instance where the trial court reread portions of the neutral statement of case to the jury panel in response to a prospective juror's question: "Is this an adult that hit or the child [*sic*] or child that hit a child supposedly?" We cannot attribute this single instance to the trial court's ruling.

Moreover, we disagree with the characterization that prospective jurors were unwilling to participate in the hearing until they heard facts about the case. What the record shows is that they were unwilling to commit to any particular outcome or determination until all the facts were before them. That outlook is proper for a

11.

prospective juror. We also reject the characterization that prospective jurors expressed confusion over the process. It is not uncommon for prospective jurors to have uncertainty as to trial practice and process. We cannot attribute that uncertainty to the trial court's ruling on D.D.'s motion in limine No. 1.

Notably, the trial court permitted D.D.'s counsel to reference the information contained in his brief opening statement when examining the jury panel. D.D. does not contend he was denied the opportunity to do so. Moreover, the court read the following neutral statement of the case to the panel, which was approved by D.D.'s counsel and contained much of the same information as the brief opening statement: "This case involves an incident that took place in a residential neighborhood in Bakersfield on Monday, February 22, 2016[,] at approximately 4:00 P.M. Plaintiff [D.D.] was six years old at the time of the incident. Plaintiff [D.D.] claims that Defendant . . . Pitcher is responsible because Defendant Pitcher while riding his bicycle ran over Plaintiff [D.D.]'s leg. Defendant Pitcher claims that he did not run over Plaintiff [D.D.]'s leg. Plaintiff [D.D.]'s left leg was broken. Plaintiff [D.D.] is also claiming damages, general damages, for the injuries he suffered. Defendant . . . Pitcher denies any responsibility for these damages."

On the record before us, we are unable to conclude it is reasonably probable D.D. would have received a more favorable result had the court unconditionally granted his motion in limine No. 1.

### C. Motion In Limine No. 9 (To Exclude Testimony of Mayra A.)[*]

#### *1. D.D. Failed to Preserve His Objections to Mayra's Testimony.*

D.D.'s motion in limine No. 9 sought to prohibit "any evidence, and specifically testimony of Mayra [A.], alleging that [D.D.] is hyper, a bad listener, and/or on a prior occasion, rode his bicycle into the street" on grounds the evidence was "(a) improper

---

[*] See footnote, *ante*, page 1.

12.

character evidence, (b) irrelevant, and (c) unduly prejudicial." The motion was based on deposition testimony given by Mayra.

The trial court's initial inclination was to grant the motion. However, after defense counsel informed the court that "what may come out in testimony is that there were instances where the witness had to send the boy home for riding his bike up and down the street and the sidewalk, onto driveways," the court stated, "I thought it was one prior occasion. It's being characterized as one prior occasion." The court continued, "Well, if you show me the deposition testimony, and I'll reconsider it. But I'll do that on the basis of perhaps habit or customary behavior of the child." The court ruled, "I'll grant [the motion] for purposes of opening statement until I have the opportunity to rule. But if you'll show me the testimony . . . I'll reconsider."

Thus, the trial court granted the motion in limine for purposes of the parties' opening statements and deferred ruling on the motion for purposes of trial testimony. D.D. does not cite to any subsequent ruling by the trial court on motion in limine No. 9 and our review of the record does not reveal any.

At trial, Mayra testified, as follows:

> "Q. And on that day [D.D.] was riding his bike or riding that bike on the street and the sidewalk, on the driveways?
>
> "A. Yes. [¶] . . . [¶]
>
> "Q. Okay. And before this accident had you ever seen [D.D.] riding his bike across the street?
>
> "A. Yes.
>
> "Q. From driveway to driveway across the street?
>
> "[D.D.'s counsel]: Objection. Leading.
>
> "THE COURT: Sustained.
>
> "BY [Pitcher's counsel]:

13.

"Q. Had you ever seen—tell me how [D.D.] would ride his bike in the neighborhood. Was it just on the sidewalk or was he all over?

"A. In our neighborhood, yeah.

"Q. Right. So in the street?

"A. In the street, yes.

"Q. On—

"A. Sidewalk, yes.

"Q. On other people's properties?

"[D.D.'s counsel]: Objection. Leading.

"THE COURT: Overruled.

"[Mayra]: Yes.

"BY [Pitcher's counsel]:

"Q. Okay. And did you ever have to tell [D.D.] to go home because he wasn't listening?

"[D.D.'s counsel]: Objection. Leading.

"THE COURT: Overruled.

"[Mayra]: Maybe a couple of times, uh-huh.

"BY [Pitcher's counsel]:

"Q. And why did you tell him to go home after he wouldn't listen to you?

"A. I remember one time that I told him maybe he's going to have some accidents and go home, yeah."

D.D.'s counsel never renewed his objections to the testimony on any grounds set forth in his motion in limine No. 9. The only objections raised by D.D.'s counsel were that certain questions posed to Mayra were leading. D.D. is not challenging the trial court's rulings on those objections. Furthermore, no testimony was elicited concerning

14.

D.D.'s alleged hyperactivity, although the record does reveal Pitcher's counsel made an erroneous reference during closing argument that such testimony had been given. No objection was made to the erroneous reference.

When a trial court defers ruling on a motion in limine, it is incumbent upon counsel to press for a ruling. (*People v. Johnson* (2018) 6 Cal.5th 541, 586 (*Johnson*).) Failure to do so forfeits any claim of error unless a renewed objection to the evidence is made during trial. (*Ibid.*; *People v. Holloway* (2004) 33 Cal.4th 96, 133 (*Holloway*); *Schwartz*, *supra*, 2 Cal.App.5th at pp. 452–453.) "When a court has not finally ruled on an in limine motion, . . . Evidence Code section 353 requires a timely objection during presentation of the evidence at trial to preserve the issue on appeal." (*Schwartz*, at p. 452.)

Here, the trial court expressly limited its ruling to opening statements. Although the court indicated it would rule at a later point in time, the record does not reveal it did so. In addition, there is no indication in the record that D.D. ever pressed the court for a final ruling. Consequently, D.D. was required to renew his objections during trial to preserve them for appeal. (*Johnson*, *supra*, 6 Cal.5th at p. 586; *Holloway*, *supra*, 33 Cal.4th at p. 133.) He did not do so and has forfeited the issue. (*Johnson*, at p. 586; *Holloway*, at p. 133.)

### 2. Claims of Error Concerning Mayra's Testimony are Without Merit.

In addition, we find no merit in D.D.'s claims of error concerning the trial court's ruling on motion in limine No. 9. The motion was premised on Mayra's deposition testimony concerning D.D.'s bicycle riding habits. That testimony was not based on observance of a single instance but rather on several instances. The court could have reasonably determined this evidence was admissible under Evidence Code section 1105, which provides: "Any otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom."

Testimony concerning D.D. not heeding Mayra's prior warnings is arguably a closer question given D.D.'s age and the fact a child is not subject to the same standard of care as an adult. (*Daun v. Truax* (1961) 56 Cal.2d 647, 654.) Yet, the trial court could have determined those prior warnings were relevant to Pitcher's defense of contributory negligence. (*Smith v. Americania Motor Lodge* (1974) 39 Cal.App.3d 1, 8-9; but see *Christian v. Goodwin* (1961) 188 Cal.App.2d 650, 655 [five-year-old child is incapable of contributory negligence as a matter of law].) In any event, D.D. did not object at trial and we need not decide the substantive merits of this claim of error.

Finally, as noted, Mayra did not testify as to the alleged hyperactivity of D.D. Thus, there is no basis for a related claim of error.

D. **Motion In Limine No. 12 (To Exclude Testimony of Pitcher's Expert)**[*]

In his motion in limine No. 12, D.D. moved to exclude "any and all medical opinions offered by biomechanical engineer, Aaron Souza, as well as [his] unsupported, improper, and entirely speculative biomechanical opinions . . . pertaining to the cause of [D.D.'s] injuries." D.D. contended Souza's opinions were "speculative, lack[ed] foundation, based on assumptions which are not supported by the record, conclusory, and thereby irrelevant and offering no probative value, but rather unduly prejudicial." D.D. contended Souza "is not a medical doctor" and is therefore "unqualified to offer medical testimony regarding [D.D.'s] injuries." He also contended that because Souza was unable to determine the point of impact of the bicycles and their speed, Souza "was entirely unable to test his hypothesis in violation of *People v. Kelly*[4]."

The trial court denied the motion. The trial judge explained, "I would deny that as a motion in limine. It may be a good statement of the law, but I'll hear what . . . Souza's

---

[*] See footnote, *ante*, page 1.

**4** *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*), abrogated by statute on unrelated point in *People v. Wilkinson* (2004) 33 Cal.4th 821, 845–848.

foundation for his testimony is before I rule." D.D. requested the court hold a hearing under Evidence Code section 402 (402 hearing) on the issue but the court denied his request.

The trial court's ruling clearly shows the judge preferred to hear Souza's foundational testimony before ruling on the admissibility of his opinions. In so ruling, the court did not foreclose D.D., in any way, from objecting to Souza's testimony if, and when, necessary.

### 1. D.D.'s Claims of Error Related to Motion In Limine No. 12.

D.D. argues the trial court erred in ruling on his motion in limine No. 12 for a multitude of reasons. D.D. presents those reasons in a scattershot and disjointed manner. We do our best to consolidate and summarize his contentions below.

D.D. contends (1) the court should have granted his request for a 402 hearing; (2) there was an insufficient foundation for Souza's opinion; (3) Souza should not have been permitted to point out arguable discrepancies between D.D.'s deposition testimony and trial testimony; (4) Souza's opinion was a "medical opinion" and he should not have been permitted to contradict the testimony of D.D.'s treating physician; (5) Souza's field of expertise is a new science that does not meet the standard set forth in *Kelly, supra*, 17 Cal.3d 24, and he was unable to test his hypothesis in violation of *Kelly*; and (6) the trial court should have, on its own motion, allowed voir dire of Souza during trial.

### 2. The Trial Court Was Within Its Discretion to Deny the 402 Hearing.

Evidence Code section 402 provides, in relevant part: "The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury . . . ." (*Id.*, subd. (b).) "In determining the admissibility of evidence, the trial court has broad discretion. Thus, it is within the [trial] court's discretion whether or not to decide admissibility questions under Evidence Code section 402, subdivision (b)

17.

within the jury's presence." (*People v. Williams* (1997) 16 Cal.4th 153, 196; see *People v. Slocum* (1975) 52 Cal.App.3d 867, 888 [same].)

" 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, . . . unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Jones* (2013) 57 Cal.4th 899, 924.) "[T]here is no abuse of discretion requiring reversal if there exists a reasonable or fairly debatable justification under the law for the trial court's decision or, alternatively stated, if that decision falls within the permissible range of options set by the applicable legal criteria." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.)

It is often the case that "until the evidence is actually offered, and the court is aware of its relevance in context, its probative value, and its potential for prejudice, . . . the court cannot intelligently rule on admissibility." (*People v. Jennings* (1988) 46 Cal.3d 963, 975, fn. 3.) Here, the trial court could have reasonably determined that it could best rule on questions of admissibility only after hearing the evidence in context and that a 402 hearing was not the best method to determine whether a sufficient factual basis could be laid for Souza's testimony. Moreover, in light of the fact that D.D.'s trial testimony arguably differed from his deposition testimony, the court's decision to defer ruling appears, in hindsight, to have been warranted. We conclude the court acted within its discretion in denying the request for a 402 hearing.

### 3. D.D. Failed to Preserve His Objections for Appeal.

<u>Souza's Testimony</u>

During trial, Souza was questioned concerning his expert qualifications. After so testifying, Pitcher's counsel requested that Souza be allowed to give expert testimony. The trial court responded, "Well, proceed, and then I'll hear any objections." D.D. did not object.

In fact, D.D.'s counsel only objected twice during the entirety of Souza's testimony. Souza testified, without objection, as to (1) his expert qualifications; (2) his inspection of the scene of the accident, Pitcher's bicycle, and a picture of D.D.'s bicycle; (3) the task he was charged with, i.e., "[t]o ascertain if the alleged injuries, slash, conditions that [D.D.] is claiming are consistent with the dynamics of the incident"; to consider the different scenarios offered by the parties to "see if any of them make sense, all of them do, [or] none of them do"; and whether he could "create a biomechanical analysis and figure out what happened"; (4) his review of written discovery responses, and D.D.'s deposition and trial testimony; (5) the competing scenarios offered by D.D. and Pitcher as to the manner in which the accident occurred; (6) measurements of the tree radius, length of sidewalk, and the length of D.D.'s body and torso; and (7) the various positions of D.D.'s body as testified by the parties.

Without objection, Souza opined that, under the first of D.D.'s proffered scenarios, "at five miles an hour [Pitcher's] bike would have to turn. It would have to be about half an inch from the tree, half an inch, imagine that. So the handlebars have to almost skim the tree. And you have to follow the radius or circumference of that tree, meaning that that half an inch the bike has to stay half an inch away from the tree the entire time you're turning. The bike has to angle. If you think about . . . those high speed motorcycles that go back and forth, they go down really far. Well, . . . Pitcher would have to be at 35 degrees. . . . [¶] . . . The rider has to be at 35 degrees in order to run over [D.D.]'s leg exactly at mid shaft. . . . [¶]. . . [¶] So the problems we have with this scenario is that you're half an inch away, the rider has to be at 35 degrees, which I bike a lot, and I couldn't do this maneuver. And then you have to go over with just the front wheel and somehow the back wheel just doesn't go over. And then remember the bicycle that [D.D.] stated that was near him was somewhere in that vicinity as well next to him. So if [*sic*] somehow Mr. Pitcher would have to miss the bicycle as well."

Souza continued, still without objection: "[Pitcher's] left handlebar would have to be a half an inch away from the tree." When asked the reason for his opinion, Souza testified, "To fit the scenario where the center, the tire, will go over exactly mid shaft of that left leg." Souza was asked, "You mean is that where [D.D.]'s injury was?" Souza responded, "Correct. You have the facts I'm sure from the orthopedic that came in here, and I won't bore you with those facts. The lower leg right in the middle of that lined up exactly with that scenario. That was the only way I could get the tire to go there, but it still didn't follow the facts of the case."

Souza opined that, under D.D.'s version of events, Pitcher's bicycle, if traveling at five miles per hour "would have had to have operated at half an inch away from the tree at a [35- or] 36-degree angle to the ground" the entire time to hit D.D.'s leg where he was injured. Souza also testified that, under D.D.'s version of events, if Pitcher was traveling at 10 miles an hour (as testified to by Pitcher at deposition), Pitcher would miss D.D.'s leg entirely.

Souza continued his testimony and opined as to what the mechanics of the accident would have been if D.D.'s body was positioned at other angles relative to Pitcher's house. He concluded Pitcher's bicycle would strike D.D.'s body at areas different from the area of actual injury. He testified, "The only [scenario] that fit was the five-mile an hour when I talked about half an inch away from the tree, which more than likely would not occur. It doesn't make sense that someone would sit at half an inch and then the angle. It's possible, but definitely not probable."

All the foregoing testimony was elicited without a single objection or motion to strike from D.D.'s counsel.

Following that testimony, Souza was asked, "So in your experience as a biomechanical engineer for many years you don't believe that that scenario is likely, more likely than not?" At this point, D.D.'s counsel lodged his first of only two objections—that the testimony was "outside the scope of [Souza's] expertise." The trial

20.

court overruled the objection and Souza was permitted to reiterate his opinion "that it's possible but it's more likely than not that it would not occur because of the things that I just went over."

Thereafter, Souza opined as to mechanics of the other scenarios offered by the parties and the likelihood the accident occurred under each of those scenarios. During this remaining testimony, only a single objection was raised by D.D.'s counsel to the effect that Souza should not be permitted to testify as to the hearsay contents of medical records. The objection was sustained and is of no consequence to our determination of this appeal.

*Analysis*

Pitcher argues that "[D.D.]'s belated objection to a single follow-up question, which merely elicited a recapping of prior testimony, did not cure his prior failure to object." Pitcher notes, by the time D.D. raised his first of two objections, "Souza already had testified, without objection, about the improbability of [D.D.]'s description of the accident, as well as the evidentiary basis for his opinion." (Italics omitted.)

In reply, D.D. argues he did "everything required to make and preserve the arguments on appeal" including (1) taking Souza's deposition; (2) making a motion in limine; (3) requesting a preliminary hearing under Evidence Code section 402; (4) requesting that he be allowed to call Souza in his case-in-chief; (5) making the first of his two objections; and (6) attempting to cross-examine Souza on his qualification and tasked charge "only to be shut down by the trial court." We believe Pitcher has the better argument.

Taking Souza's deposition, by itself, did nothing to preserve D.D.'s objections for appeal. Nor did D.D.'s request to call Souza in his case-in-chief. D.D. does not cite to any law and provides this court with no analysis to support these contentions.

As noted, the trial court deferred ruling in limine on the admissibility of Souza's testimony. Again, under such circumstances, it was necessary for D.D. to renew his

21.

objections at the time of trial in order to preserve them for appeal. (*Johnson*, *supra*, 6 Cal.5th at p. 586; *Holloway*, *supra*, 33 Cal.4th at p. 133; *Schwartz*, *supra*, 2 Cal.App.5th at p. 452.) D.D.'s objections were not preserved merely by making the motion.

We have determined the trial court was within its discretion to deny the request for a 402 hearing and to, instead, hear the foundational facts during trial before ruling on the admissibility of Souza's testimony. Immediately after Pitcher requested that Souza be allowed to provide expert testimony, the court indicated Pitcher could proceed but that the court would hear any objections. Yet no objections (save the two objections discussed) were made. The mere request for a 402 hearing did not preserve the objections raised in D.D.'s motion in limine No. 12.

Also, it is an unfair characterization to contend the trial court "shut down" cross-examination as to Souza's qualifications and task engagement. The record shows D.D. was permitted to cross-examine on those subjects and that only a single objection was raised and sustained when D.D. attempted to impeach the witness with the declaration of Pitcher's counsel. The subject matter, in general, was not foreclosed.

As to D.D.'s objection that certain testimony would exceed the scope of Souza's expertise, we believe Pitcher's characterization of the objection is accurate. The question posed to Souza was designed to recap his testimony. By the time the question was asked, the information necessary to answer it had already been imparted to the jury without objection.

Finally, we reject D.D.'s claim that it would have been futile to object to Souza's testimony. Nothing in the record suggests this is the case. The contention is based on pure speculation.

We conclude D.D. failed to preserve the objections contained in his motion in limine No. 12 by failing to renew them during trial.

#### *4. D.D.'s Claims of Prejudicial Error are Without Merit.*

Considering the merits of D.D.'s substantive claims, we conclude no error occurred in connection with Souza's testimony.

Souza laid out a sufficient evidentiary basis for his opinion. He considered the parties' competing versions of events as testified to at trial and deposition, their discovery responses, and the information he gathered from his inspections. D.D. does not point to any specific trial testimony wherein Souza assumed facts unsupported by the evidence.

In order to perform a thorough analysis, Souza was required to consider and address each of the varying contentions of the parties concerning the manner in which the accident occurred. By the time he testified, D.D. had already testified and had, himself, admitted to testifying at deposition to differing accounts of the accident. It is hard to conceive any prejudicial error as a result of acknowledging and addressing those differing versions of events and D.D. fails to demonstrate any such error.

The contention that the field of biomechanics and bioengineering are new fields of science requiring examination under *Kelly*, *supra*, 17 Cal.3d 24 is without merit. *Kelly* generally stands for the proposition that expert opinion based on novel scientific methods are inadmissible if those methods have not gained "general acceptance . . . in the relevant scientific community." (*Id*. at p. 30.) *Kelly* is not applicable. An approach is not considered novel when it is based on "long-accepted way[s] of observing physical items, applying the scientific method to those observations and deriving an opinion from them." (*People v. Peneda* (1995) 32 Cal.App.4th 1022, 1030.) Here, Souza relied on standard mathematics and the laws of physics in rendering his opinion—e.g., the measurement of distances and angles, and the speed and momentum of Pitcher as he rode his bicycle. Such scientific methods are not unique to the fields of biomechanics and bioengineering and are generally accepted in the scientific community.[5]

---

[5] Pitcher notes numerous cases have been reported where accident reconstruction testimony from biomechanical experts and accident reconstruction experts has been

We also reject the claim that Souza's testimony constituted a medical opinion. The claim in D.D.'s motion in limine was that Souza could not render an opinion on the type of fracture suffered by D.D. Notably, it was only on D.D.'s cross-examination of Souza that such information came out on trial. Because D.D. himself elicited this information from Souza at trial, any claimed error was invited and cannot support reversal of the judgment. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [" 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal."].)

Moreover, the claim that Souza should not have been allowed to contradict the medical testimony of D.D.'s orthopedic surgeon, Dr. Andrea Snow, is without merit. D.D. has failed to identify any specific trial testimony of Souza's that was incompatible with that of Snow.[6]

---

admitted into evidence, citing: *People v. Duenas* (2012) 55 Cal.4th 1, 17–18 (biomechanical expert); *Romine v. Johnson Controls, Inc.* (2014) 224 Cal.App.4th 990, 998 (same); *Hartt v. County of Los Angeles* (2011) 197 Cal.App.4th 1391, 1404 (accident reconstruction expert); *DePalma v. Rodriguez* (2007) 151 Cal.App.4th 159, 164–166 (biomechanical expert); *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150, 1153 (accident reconstruction expert); *Williams v. Volkswagenwerk Aktiengesellschaft* (1986) 180 Cal.App.3d 1244, 1258, footnote 5 (same); *Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 58–59 and footnote 3 (biomechanical/accident reconstruction expert); *People v. French* (1978) 77 Cal.App.3d 511, 523–524 (accident reconstruction expert); *Box v. California Date Growers Assn.* (1976) 57 Cal.App.3d 266, 275 (same). Although none of these cases hold that the fields of biomechanics and bioengineering are generally accepted within the scientific community, they do illustrate the use of such experts in litigation is not uncommon.

[6] We note Snow was asked the following question at trial and gave the following answer: "Q: What if you had been told it was a child's bike falling on the boy's leg, that that's what caused [his injury]?" "A: I think that would have been suspicious to cause this level of trauma to [D.D.]." Souza's testimony is not inconsistent with Snow's testimony. Souza never opined it was D.D.'s bicycle falling on D.D.'s leg that caused his injury.

Finally, we are unaware of any authority to support the contention that the trial court should have, on its own motion, allowed voir dire of Souza during trial once D.D. raised his first objection to Souza's testimony. D.D. does not cite to any such authority.

Thus, we find no merit in D.D.'s claims of error concerning Souza's testimony.

## II. THE TRIAL COURT DID NOT ERR IN DENYING D.D.'S MOTION FOR A NEW TRIAL[*]

"[A] trial judge is accorded a wide discretion in ruling on a motion for new trial and . . . the exercise of this discretion is given great deference on appeal. [Citations.] However, we are also mindful of the rule that on an appeal from the judgment it is our duty to review all rulings and proceedings involving the merits or affecting the judgment as substantially affecting the rights of a party (see Code Civ. Proc., § 906), including an order denying a new trial. In our review of such order denying a new trial, as distinguished from an order granting a new trial, we must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an independent determination as to whether the error was prejudicial." (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871–872, italics omitted.)

Pitcher acknowledges he did not file an opposition to D.D.'s motion for a new trial. D.D. contends that, as a result, Pitcher "has now waived all opposition to the legal errors and abuse of judicial discretion raised by [D.D.] in his Motion for New Trial, as well as on appeal," citing California Rules of Court (CRC), rule 8.54(c) and *Sprague v. Equifax, Inc*. (1985) 166 Cal.App.3d 1012, 1050 (*Sprague*). Neither authority stands for the proposition that the failure to oppose a motion for new trial which is ultimately denied by the court operates to waive any argument on appeal that the judgment should be affirmed.

---

[*] See footnote, *ante*, page 1.

CRC, rule 8.54 applies to motions made in a reviewing court.  The motion for a new trial was made to the trial court.  Moreover, CRC, rule 8.54 only provides that a "failure to oppose a motion [in the reviewing court] *may* be deemed a consent to the granting of the motion." (Italics added.)  The language is permissive, not mandatory.

The citation to *Sprague* is likewise inapposite.  It merely stands for the proposition that " 'every [appellate] brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court *may* treat it as waived, and pass it without consideration.' " (*Sprague*, *supra*, 166 Cal.App.3d at p. 1050, italics added.)  Like CRC, rule 8.54, the point applies to appellate proceedings and is permissive, not mandatory.

D.D.'s motion for a new trial was grounded upon the same arguments he makes on appeal.  Having reviewed and considered those arguments and the entire record on appeal, we conclude the court did not abuse its discretion in denying D.D.'s motion for a new trial.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded in favor of respondent David Pitcher.

DETJEN, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


SNAUFFER, J.

26.