Filed 10/16/18; Certified for Publication 11/15/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EDGAR A. ALCAZAR, a Minor, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LOS ANGELES UNIFIED SCHOOL DISTRICT, <br><br> Defendant and Respondent. | B281383 <br><br> (Los Angeles County Super. Ct. No. BC534724) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David L. Minning, Judge.  Affirmed.

Homampour Law Firm, Arash Homampour; Law Offices of David H. Greenberg, David H. Greenberg; Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiff and Appellant.

Hurrell Cantrall, Thomas C. Hurrell and Melinda Cantrall for Defendant and Respondent.

—————————————

Edgar A. Alcazar (Edgar), a minor, allegedly suffered severe and permanent injuries when he fell from the branch of a tree located on the campus of his middle school. By and through his guardian ad litem, Edgar sued the Los Angeles Unified School District (LAUSD). A jury found in favor of LAUSD on all of Edgar's claims.

On appeal, Edgar advances two arguments for why he is entitled to a new trial; both arguments relate to the jury selection process, which ultimately involved three venires. First, Edgar argues that the trial court erred when, following the first venire, it refused to allow counsel to make mini-opening statements to the second and third venires and prohibited counsel from referring to the specific facts of the case during the balance of voir dire. Second, Edgar contends that the trial court erred by refusing to remove two jurors for cause.

We are not persuaded by either of Edgar's arguments. Accordingly, we affirm the judgment.

## BACKGROUND

On May 7, 2013, shortly after lunch began at Edgar's middle school, the principal received a radio call that "something had happened."

A minute or two after receiving the call, the principal arrived at the scene and found Edgar, who was 13 years old at the time, lying on his back on a pedestrian walkway next to a concrete planter box that held a crepe myrtle tree. Lying next to Edgar was a broken branch from that tree. The branch was approximately 2 inches in diameter at its thickest point and

2

approximately six to eight feet long.  Prior to the incident, school staff had seen Edgar swinging "like Tarzan" from that very same branch and had warned him not to do so as it was "unsafe."

When the principal found him, Edgar had his eyes open and was conscious, but was saying little.  The principal summoned paramedics, who transported Edgar to a nearby hospital where he was treated for a skull fracture and a concussion or a mild traumatic brain injury.

Six months later, in January 2014, Edgar sued LAUSD for negligence and premises liability, alleging that he had "sustained severe and permanent injuries when he climbed and then fell from the subject tree."  By the time of trial in November 2016, Edgar asserted three separate claims against LAUSD: negligence; a violation of Education Code section 44807; and, pursuant to Government Code section 835, a claim for a dangerous condition on public property.

I.      *The Jury Selection Process*

Initially, the trial court suggested that the parties limit their questioning to 1.5 hours per side.  Although LAUSD's counsel was amenable to such a time limit, Edgar's counsel demurred, explaining that, due to the complexity of a personal injury action against a school district, especially one where the alleged special damages exceeded $15 million, he would need more than an hour and a half to examine prospective jurors.  The trial court stated that it understood the concerns of Edgar's counsel and did not place any time limits on voir dire.

A.     *The trial court's limits on voir dire*

On November 1, 2016, before the start of voir dire, the parties jointly requested leave to give mini-opening statements to the venire. The trial court acceded to the parties' request and limited each side's mini-opening to three minutes.

On November 3, 2016, the first day of voir dire, the trial court began by reading a short, stipulated statement of the case to the prospective jurors setting out the parties' basic contentions.[1] Immediately thereafter, the trial court allowed counsel for each party to give a mini-opening statement.

In his mini-opening statement, Edgar's counsel, among other things, discussed the following: Edgar's age; his learning disabilities; his reputation as a "class clown"; LAUSD's knowledge that children at Edgar's school, including Edgar, were swinging on tree branches; Edgar's theories of liability: LAUSD's failure to provide a safe environment by not cutting down the

---

[1] The agreed-upon statement of the case provided as follows: "This matter arises out of an incident that [occurred] on May 7, 2013, at [the middle school]. [Edgar] contends [that] he was left unsupervised and fell from a tree located on campus during school hours thereby causing severe injuries. [Edgar] contends that [LAUSD] is liable because it knew or should have known that children were climbing trees unsupervised and did nothing to prevent students from doing so. [¶] [LAUSD] contends that [Edgar] was enrolled in the Special Day Class wherein he was properly supervised at all pertinent times. [LAUSD] further contends that the incident was the result of [Edgar's] careless conduct and that [LAUSD] did not cause the incident. [¶] [Edgar] seeks damages for past and future medical bills, future pain and suffering, and future loss of earning and earning capacity. [LAUSD] disputes liability and the extent and scope of [Edgar's] claimed injuries and damages."

branch and by not properly supervising the children; and Edgar's alleged damages, including "millions of dollars" of future medical care.

In his mini-opening statement, LAUSD's counsel discussed, among other things, the following: Edgar's height and weight (five feet 11 inches tall, 176 pounds); his learning disabilities and also his ability to distinguish right from wrong; the school's repeated warnings to Edgar not to swing on tree branches and his refusal to follow those directions; the school's supervision of children during lunch recess; and Edgar's alleged injuries.

At the close of the first day of voir dire, the trial court dismissed for cause three prospective jurors who Edgar claimed would be unfair to his case and dismissed one juror who LAUSD claimed would be unfair to its case. The trial court took under advisement the dismissal of a fifth member of the venire, prospective juror No. 3.

On the morning of November 4, 2016, prospective juror No. 3 asked to speak to the court. After the trial court granted his request, prospective juror No. 3 advised that, based upon the "details" that came out in the parties' "presentation[s]," he could not be fair to Edgar. Based on the information in the parties' mini-opening statements, prospective juror No. 3 concluded, "'Wow, this kid didn't take responsibility for his own actions. He did something he was told not to do.'" Prospective juror No. 3 stated further that he believed "it was a mistake to put out that much detail about [the case] because it already gave [him] reason to be against [Edgar]." The trial court dismissed prospective juror No. 3 for cause.

In light of the comments made by prospective juror No. 3, and in light of concerns that the trial court had about Edgar's

counsel preconditioning the prospective jurors—concerns that the trial court shared with counsel before interviewing prospective juror No. 3—the trial court concluded that the parties would not be allowed to give mini-opening statements to any future panels of prospective jurors; instead, the court would simply read the parties' agreed-upon statement of the case. In addition, the trial court instructed the parties that during voir dire "[t]here will be no mentioning of facts specific to this case." The court explained that while general questions about school safety, for example, were permissible, questions based on facts specific to the case at bar were not.

To the second venire on November 4 and to the third venire on November 7, the trial court read the parties' joint statement of the case, but did not allow the parties to give mini-opening statements. In addition, on November 4, the trial court, using the language of CACI No. 106, instructed the prospective jurors that statements by counsel, including statements made during voir dire, were not evidence.

During his questioning of the second and third venires, Edgar's counsel referenced a number of case-specific facts and issues that were either not mentioned in the joint statement of the case or only alluded to; those facts and issues included the following: Edgar's age at the time of the incident; Edgar's status as a special needs student at a regular school; whether a 13-year old could look at a tree limb and appreciate that the branch would not hold his weight; whether a 13-year-old could be at fault for hurting himself; whether a tree should be cut/trimmed for safety reasons; whether a school should supervise children who are 13 years or older; whether a school district has an obligation to do more than tell a 13-year-old not to do something that is

6

risky or unsafe; whether telling a student not to swing on a tree limb was sufficient to deter the student from repeating that behavior in the future; whether a school should tell parents about their child's potentially dangerous behavior while at school; whether a school should supervise children in the same way as their parents; and whether any of the prospective jurors had suffered a traumatic brain injury or had any experience with someone who had suffered such an injury.

In addition, Edgar's counsel questioned the second and third venires on a number of legal concepts. For example, Edgar's counsel discussed with the prospective jurors the concept of comparative negligence, asking repeatedly if they could keep an open mind if Edgar admitted that he was partially at fault. Edgar's counsel also explored with the prospective jurors whether they could award Edgar "a lot of money" for his alleged damages, including compensation for pain and suffering. On a related note, Edgar's counsel inquired if the prospective jurors would cap Edgar's damages or award him reduced damages because the defendant was a school district.

### B. *Juror M: challenged for cause*

One of the members of the initial venire was Juror M. During voir dire on November 3, Juror M volunteered that she thought LAUSD could not "be held responsible for a kid being a kid." Juror M explained further that, Edgar "was told multiple times, [but] he did it nonetheless. And kids will be kids, they'll do whatever they want." When pressed by Edgar's counsel on whether she could keep an "open mind," Juror M responded as follows: "Sure, I guess; but then again it would have been another issue. . . . [¶] . . . I mean—I don't know. I just don't

7

think the school should be held responsible for the kid's actions." When asked by Edgar's counsel if she could be fair to Edgar, she replied, "No.  [¶]  . . .  [¶]  I wouldn't be fair."

When asked by LAUSD's counsel if she could try to be fair and analyze the evidence as it came across the witness stand, Juror M said, "Yes."  Further, when asked if she was going to give Edgar a "fair shake," Juror M said, "I'll try, yes."  And, when asked if she would obey the law as instructed by the court, Juror M replied, "Yes."

On the following day, November 4, Edgar's counsel again inquired as to Juror M's ability to be fair given Edgar's damages claim.  Juror M responded that Edgar's claim for damages was "very excessive."  Juror M admitted further that, because she was already thinking that the damages claim was excessive, she was effectively telling Edgar's counsel that she "probably can't be fair."  However, Juror M also told Edgar's counsel that she would try to be fair and that she "would have to see the evidence."

In response to probing by LAUSD's counsel, Juror M stated that she would be able to be fair and keep an open mind, listen to the testimony and then make a decision.  In addition, Juror M re-affirmed that she would follow the law as instructed.

Later that day, the trial court denied Edgar's challenge to Juror M for cause.  Ultimately, Juror M served on the jury.

C.     *Juror S:  challenged for cause*

Juror S joined the panel of prospective jurors on November 4, the second day of voir dire.  When Edgar's counsel asked Juror S if he had any strong feelings about the case, he replied that he needed to "hear more about the case."  When asked if he had any strong feelings that would make him unfair

8

to Edgar, Juror S responded, "No." When pressed by Edgar's counsel, Juror S stated that he would keep an open mind even if Edgar admitted to being partially responsible for his injury. Juror S stated further that it would not be hard for him to keep an open mind about the school's alleged role in causing or contributing to Edgar's injury. However, Juror S expressed some hesitation on the issue of compensating Edgar for his injury: "Well, the kid, they already know the rules. That's his own responsibility because they already know about the rules." When Edgar's counsel attempted to explore Juror S's answers regarding Edgar's knowledge about the school's safety rules, Juror S became in his own words "nervous," responding to questions by stating, "I don't understand," and "I don't know what to say," and ultimately reversing himself, stating that he could not keep an open mind because he was nervous. After Juror S said that he was nervous, the trial court suggested that the parties turn their questioning to another prospective juror, which they did.

Later that day, the trial court denied Edgar's challenge to Juror S for cause. Ultimately, Juror S served on the jury.

On November 7, 2016, while voir dire was still proceeding, Edgar moved for a mistrial, arguing that the trial court should have granted certain of his challenges for cause, including his challenges to Jurors M and S. On November 9, 2016, LAUSD filed its written opposition to the motion. On November 10, 2016, after voir dire had ended and testimony had begun, the trial court denied the motion.

II. *The Trial*

At trial, Edgar conceded that he was "partially responsible" for his injuries, but argued nonetheless that LAUSD failed to

follow its own safety plans and rules and that its negligence caused his injuries. In its defense, LAUSD argued that there was a detailed safety plan in place, the school and its staff followed that plan, and Edgar's learning disabilities did not interfere with his ability to distinguish right from wrong—that is, Edgar, having been previously warned about the danger of swinging from tree branches, knowingly chose to engage in risky behavior and no reasonable amount of supervision could have prevented the accident.

On December 5, 2016, after less than two hours of deliberation, the jury returned a verdict in favor of LAUSD. On each claim, the jury's vote was 11 to 1. On January 3, 2017, the trial court entered judgment in LAUSD's favor. Edgar timely appealed.

## DISCUSSION

I.   *The Prohibition on Additional Mini-opening Statements and Case-specific Facts*

On appeal, Edgar argues the trial court's order after the first day of voir dire prohibiting additional mini-opening statements and discussion of case-specific facts "cannot be squared with the purpose of [Code of Civil Procedure] section 222.5, or with its terms. It was clear error." As discussed below, we disagree.

A.   *Standards of review*

"An appellate court applies the abuse of discretion standard of review to a trial court's conduct of the voir dire of prospective jurors. [Citation.] A trial court abuses its discretion when its

10

ruling [on voir dire] ' "fall 'outside the bounds of reason.' " ' "
(*People v. Benavides* (2005) 35 Cal.4th 69, 88; *People v. Navarette*
(2003) 30 Cal.4th 458, 486 [same].)

The "interpretation of governing statutes is decided de novo
by the appellate court." (*Gaytan v. Workers' Comp. Appeals Bd.*
(2003) 109 Cal.App.4th 200, 214.) "When we construe a statute,
our ' " 'fundamental task . . .' " . . . " 'is to ascertain the intent of
the lawmakers so as to effectuate the purpose of the statute.' " ' "
(*Hartnett v. San Diego County Office of Education* (2017) 18
Cal.App.5th 510, 522.)

> B. *The evolution of section 222.5*
>> 1. Original enactment

In September 1990, the Legislature enacted section 222.5 of
the Code of Civil Procedure[2] as part of a broader effort to revise
and extend indefinitely the Trial Court Delay Reduction Act of
1986. (Office of Local Gov. Affairs, analysis of Assem. Bill
No. 3820 (Sept. 10, 1990), p. 1.) "In order to further reduce
delays in criminal court actions, the Trial Court Delay Reduction
Act provide[d] judges with more authority to control voir dire
examination." (*Id*. at p. 3.) Section 222.5 was designed to extend
that authority to control voir dire to civil court actions. (*Ibid*.)

To obtain that end, section 222.5 provided that, following
the trial judge's examination of the venire, "counsel for each
party *shall* have the right to examine, by oral and direct
questioning, any of the prospective jurors in order to enable

---

[2] Section 222.5 was added by Statutes 1990, chapter 1232
(Assem. Bill No. 3820), section 1.5.

All further statutory references are to the Code of Civil
Procedure unless otherwise indicated.

11

counsel to intelligently exercise both peremptory challenges and challenges for cause." (Italics added.) Section 222.5 provided further that "the trial judge *should* permit liberal and probing examination calculated to discover bias or prejudice with regard to the *circumstances of the particular case.*" (Italics added.) Although the statute gave counsel the right to examine the venire, section 222.5 made clear that any such examination was subject to the trial court's discretion: "The scope of the examination conducted by counsel shall be within *reasonable limits* prescribed by the trial judge in the judge's *sound discretion.*" (Italics added.) As originally enacted, section 222.5 did not provide that counsel for the parties could make short opening statements to the venire.

### 2. 2011 amendment

In September 2011, the Legislature amended section 222.5. (Stats. 2011, ch. 409 (Assem. Bill No. 1403), § 1.) As originally introduced in March 2011, Assembly Bill No. 1403 would, among other things, "*require* the trial judge to permit liberal and probing examination calculated to discover bias or prejudice." (Assem. Bill No. 1403 (2011–2012 Reg. Sess.) as introduced Mar. 7, 2011, p. 1, italics added.) Specifically, Assembly Bill No. 1403 proposed amending the section 222.5 as follows: "During any examination conducted by counsel for the parties, the trial judge *shall* permit liberal and probing examination calculated to discover bias or prejudice with regard to the circumstances of the particular case." (*Id.* at p. 2.) However, by June 2011, that mandatory language had been stricken from the proposed amendment in both the Assembly and in the Senate. (See Assem. & Sen. Amend. to Assem. Bill No. 1403 (2011–2012 Reg. Sess.)

12

May 10, 2011 & June 23, 2011, p. 3.)  The more permissive "should" language was retained in the final version of the amendment.

In early September 2011, the Senate introduced several amendments to the proposed legislation including the following: "The trial judge should allow a brief opening statement by counsel for each party prior to the commencement of the oral questioning phase of the voir dire process."  (Sen. Amend. to Assem. Bill No. 1403 (2011-2012 Reg. Sess.) Sept. 2, 2011, p. 3.)  The Senate Judiciary Committee explained that the proposed amendments, including the provision for opening statements, were "largely declarative of existing practices."  (Sen. Com. on Judiciary, Analysis of AB 1403 (2011-2012 Reg. Sess.) as amended Sept. 2, 2011, p. 4.)

In its 2011 amendments to section 222.5, the Legislature left unchanged the trial court's discretion to place "reasonable limits" on the scope of the examination by the parties' counsel. The Senate Judiciary Committee noted that this decision was a deliberate one:  "consensus language was reached that would address limitations placed by judges on parties conducting voir dire [such as prohibiting the use of blanket time limits on the voir dire process] while still *preserving judicial discretion* in overseeing a fair and impartial voir dire process."  (Sen. Com. On Judiciary, Analysis of AB 1403 (2011-2012 Reg. Sess.) as amended Sept. 2, 2011, p. 2, italics added; see also id. at pp. 6-7.)

In short, the legislative history of section 222.5 reveals that the Legislature enacted the statute and later amended it to insure that civil trial courts possessed the necessary discretionary authority to control the voir dire process.

13

3.    Section 222.5 at the time of trial[3]

As a result of the 2011 amendments, section 222.5, in pertinent part, provided as follows at the time of trial: "Upon completion of the judge's initial examination, counsel for each party shall have the right to examine, by oral and direct questioning, any of the prospective jurors in order to enable counsel to intelligently exercise both peremptory challenges and challenges for cause. *During any examination conducted by counsel for the parties, the trial judge should permit liberal and probing examination calculated to discover bias or prejudice with*

---

[3] Section 222.5 was subsequently amended in 2017, with the amendments taking effect on January 1, 2018. (Stats. 2017, ch. 337 (Sen. Bill No. 658), § 1.)

The 2017 amendments made certain advisory provisions mandatory. For example, the current version of section 222.5 requires a trial court to allow counsel greater leeway in determining bias or prejudice ("the trial judge *shall* permit liberal and probing examination"). (§ 222.5, subd. (b)(1), italics added.) In addition, "[u]pon the request of a party, the trial judge *shall* allow a brief opening statement by counsel for each party prior to the commencement of the oral questioning phase of the voir dire process." (§ 222.5, subd. (d), italics added.) The current version of section 222.5, however, continues to provide that the scope of examination conducted by the parties counsel must be within reasonable limits prescribed by the trial judge in the judge's sound discretion. (§ 222.5, subd. (b)(1).)

The current version of section 222.5 is inapplicable here because the Legislature did not expressly provide that the amended statute was to operate retroactively. (See Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 658 (2017-2018 Reg. Sess.) August 22, 2017; see also *People v. Ledesma* (2006) 39 Cal.4th 641, 664; *In re Y.A.* (2016) 246 Cal.App.4th 523, 528.)

*regard to the circumstances of the particular case. . . . [¶] The trial judge should allow a brief opening statement by counsel for each party prior to the commencement of the oral questioning phase of the voir dire process. [¶] The scope of the examination conducted by counsel shall be within reasonable limits prescribed by the trial judge in the judge's sound discretion.* In exercising his or her sound discretion as to the form and subject matter of voir dire questions, the trial judge should consider, among other criteria, any unique or complex elements, legal or factual, in the case and the individual responses or conduct of jurors which may evince attitudes inconsistent with suitability to serve as a fair and impartial juror in the particular case. . . . [¶] . . . For purposes of this section, an 'improper question' is any question that, as its dominant purpose, attempts to precondition the prospective jurors to a particular result, indoctrinate the jury, or question the prospective jurors concerning the pleadings or the applicable law." (Italics added.)

      C.    *No abuse of discretion*
Our Supreme Court has repeatedly affirmed that "it is *not 'a function of the examination of prospective jurors to educate the jury panel to the particular facts of the case*, to compel the jurors to commit themselves to vote a particular way, to prejudice the jury for or against a particular party, to argue the case, to indoctrinate the jury, or to instruct the jury in matters of law.' [Citation.] Therefore, a question may be excluded if it appears to be intended solely to accomplish such improper purpose." (*People v. Williams* (1981) 29 Cal.3d 392, 408, fn. omitted, italics added; see *People v. Carter* (2005) 36 Cal.4th 1114, 1178, citing *People v. Williams* with approval.) The law is "clear that '[i]t is not a

15

proper object of voir dire to obtain a juror's advisory opinion based upon a preview of the evidence.' " (*People v. Butler* (2009) 46 Cal.4th 847, 860.)  Rather, a proper inquiry must be " ' "directed to whether, *without knowing the specifics of the case*, the juror has an 'open mind' " ' " on the issues presented.  (*Id.* at p. 859, italics added.)

Here, in order to minimize the risk of improper questioning by counsel for either party, but especially to reduce the likelihood that counsel for Edgar might engage in preconditioning, the trial court decided to limit the amount of case-specific facts the parties could put before the prospective jurors either through mini-opening statements and/or their questioning.  This decision, as the relevant version of section 222.5 makes plain, was an act within the sound discretion of the trial court—a discretion that the Legislature in 2011 was intent on preserving.  That version of section 222.5 expressly provides that the "scope of the examination conducted by counsel shall be within *reasonable limits prescribed by the trial judge in the judge's sound discretion.*"  (Italics added.)  Moreover, that version of section 222.5 did not require the trial court to allow the parties to make several or even one brief opening statement[4] or to reveal detailed

---

[4] Under the trial court's local rules, the court had the option of either "read[ing] to the prospective jurors a brief statement of the case, *or . . .* allow[ing] the parties to deliver mini-opening statements."  (Super. Ct. L.A. County, Local Rules, rule 3.73 (2016 rev. ed.), italics added.)  In other words, when the trial court decided to limit information about the case to just the agreed-upon statement of the case, it was acting in conformance with the local rules.

facts about the case that supported the parties' contending theories.

The trial court's decision was not only within its discretion, but it was also grounded in fact. The decision was based on the court's independent observations of the first day of voir dire. We "afford deference to the trial court's factual determinations" which are based on firsthand observations not available to us on appeal. (See generally *People v. Barnwell* (2007) 41 Cal.4th 1038, 1053.)

The trial court's decision was also supported by the independent statements of prospective juror No. 3, who felt that his ability to be impartial had been irrevocably compromised by the detailed nature of the parties' mini-opening statements. We defer to the trial court when it has had the opportunity to hear a witness speak and observe his or her demeanor. (*In re Lawley* (2008) 42 Cal.4th 1231, 1241.)

Finally, following its order, the trial court allowed Edgar's counsel considerable leeway with respect to what facts did and did not constitute case-specific facts. Edgar's counsel was permitted to question the second and third venires on a wide range of facts germane to the case, including Edgar's age, his status as a special needs student at a regular school, a 13-year-old's ability to evaluate the risk of injury from swinging on a particular tree limb, school supervision of 13-year olds, traumatic brain injuries, the principles of comparative negligence as applied to this case, and compensation for Edgar's alleged pain and suffering. In other words, the trial court did not impose or enforce a complete ban on case-specific facts; rather, it imposed what it determined to be necessary but limited restraints on counsels' examination of the prospective jurors. As a result, any

17

potential prejudice to Edgar arising from the order denying additional mini-opening statements was mitigated by the liberality with which trial court allowed his counsel to question the second and third venires.

In short, on the record before us, we cannot conclude that the trial court's decision was beyond the bounds of reason. (*People v. Benavides*, *supra*, 35 Cal.4th at p. 88.) Consistent with the terms of and the legislative intent behind the statute, the trial court permitted liberal and probing examination of the prospective jurors within reasonable limits.

II.     *The Denial of "Cause" Challenges to Jurors M and S*
        A.     *Standard of review*

A prospective juror may be challenged for cause when the juror has actual bias, "the existence of a state of mind on the part of the juror in reference to the case, or to any of the parties, which will prevent the juror from acting with entire impartiality, and without prejudice to the substantial rights of any party." (§ 225, subd. (b)(1)(C).)

California courts have long recognized that "a juror is not disqualified by reason of general bias entertained against a class of actions, when it appears from his testimony that he can lay aside that prejudice, and, uninfluenced by it, try the cause at issue solely upon the evidence and the instructions of the court as to the law." (*Fitts v. Southern Pacific Co.* (1906) 149 Cal. 310, 314.)

"In general, the qualification of jurors challenged for cause are 'matters within the wide discretion of the trial court, seldom disturbed on appeal.' " (*People v. Kaurish* (1990) 52 Cal.3d 648, 675.) "[A] trial court's rulings on motions to exclude for cause are

18

afforded deference on appeal, for 'appellate courts recognize that a trial judge who observes and speaks with a prospective juror and hears that person's responses (noting, among other things, the person's tone of voice, apparent level of confidence, and demeanor), gleans valuable information that simply does not appear on the record.' " (*People v. Avila* (2006) 38 Cal.4th 491, 529.)

*People v. Weaver* (2001) 26 Cal.4th 876, is illustrative. In that case, two venirepersons, when questioned by defense counsel expressed the general belief that the death penalty was the appropriate penalty for all murders. (*Id*. at pp. 909-910, 911-913.) However, both prospective jurors subsequently modified their views when questioned by the prosecutor, stating that if chosen they would follow the law as instructed by the trial court. (*Id*. at pp. 912-913.) In reaching its decision that the trial court did not abuse its discretion in denying the defendant's challenges to those prospective jurors, our Supreme Court stated, "A juror will often give conflicting or confusing answers regarding his or her impartiality or capacity to serve, and the trial court must weigh the juror's responses in deciding whether to remove the juror for cause. . . . '[W]here equivocal or conflicting responses are elicited regarding a prospective juror's ability to [apply the law], the trial court's determination as to his true state of mind is binding on an appellate court.' " (*Id*. at p. 910.)

Similarly, in *People v. Crittenden* (1994) 9 Cal.4th 83, our Supreme Court held that the trial court did not err in denying challenges for cause to two venirepersons who expressed strong views in favor of the death penalty but who also later stated that they would follow the law. (*Id*. at p. 123.) Although both prospective jurors expressed conflicting views, "[n]either juror

19

expressed views indicative of an *unalterable preference* in favor of the death penalty, such that their protestations that they would follow the law would not 'rehabilitate' them." (*Ibid.*, italics added.)  The court further noted, "because both jurors provided conflicting responses relating to their views concerning the death penalty, as indicated above, the trial court's determinations as to their state of mind, based in part upon their demeanor, are binding upon this court."  (*Ibid.*)

B.  *No abuse of discretion in denying challenges*
Here, the trial court did not abuse its considerable discretion when it denied Edgar's "for cause" challenges to Jurors M and S.  Although both jurors made conflicting statements about their ability to remain impartial, neither juror "expressed views indicative of an unalterable preference" in favor of LAUSD.  (*People v. Crittenden, supra*, 9 Cal.4th at p. 123.)  Instead, both Jurors M and S expressly stated that they could

20

keep an open mind.  Accordingly, we hold that the trial court did not abuse its discretion by denying Edgar's "for cause" challenges to Jurors M and S.[5]

---

[5] In his opening brief, Edgar also contended that the trial court erred by denying a challenge for cause to a third prospective juror, Juror D.  However, prospective Juror D did not serve on the jury, because the parties agreed to dismiss her for hardship.  Our Supreme Court has instructed that a trial court's erroneous denial of a "for-cause" challenge cannot constitute reversible error unless the challenged juror ultimately serves on the jury.  (See *People v. Black* (2014) 58 Cal.4th 912, 920; *People v. Yeoman* (2003) 31 Cal.4th 93, 114; see also *People v. Baldwin* (2010) 189 Cal.App.4th 991, 1000-1001 ["the only for-cause challenges that are relevant on appeal are challenges made to *sitting* jurors"].)

In his reply brief, Edgar attempts to remedy the loss of his argument about prospective Juror D by arguing for the first time that the trial court erred by denying his "for cause" challenge to prospective Juror K, who ultimately sat on the jury.  We refuse to consider Edgar's argument regarding Juror K, because any " 'such consideration would deprive [LAUSD] of an opportunity to counter the argument.' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)  " 'Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief.  To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission.  Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)  Here, Edgar has not shown good cause for why he failed to include his

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.


                                    JOHNSON, Acting P. J.


We concur:



        BENDIX, J.



        CURREY, J.*

---

argument about Juror K in his opening brief.  In fact, he has not offered any explanation beyond inadvertence.

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EDGAR A. ALCAZAR, a Minor, etc., | B281383 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC534724) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | ORDER CERTIFYING FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion in the above-entitled matter filed on October 16, 2018, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____   _____   _____

JOHNSON, Acting P. J.        BENDIX, J.            CURREY, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.