Filed 6/15/26  Hernandez v. Castro CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| VENTURA HERNANDEZ et al., | |
| Plaintiffs and Respondents, | E083463 |
| v. | (Super. Ct. No. PSC2004315) |
| MARIA ROCIO CASTRO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Godofredo Magno, Judge.  Affirmed.

Baker & Hostetler, Philip J. Eskenazi, and Alexis Cruz, for Defendant and Appellant.

Parris Law Firm, Jason P. Fowler and Jonathan W. Douglass; Benedon & Serlin, Judith E. Posner, and Kian Tamaddoni, for Plaintiffs and Respondents.

# I.

## INTRODUCTION

Defendant Maria Rocio Castro ran a red light and, without braking, hit plaintiff Ventura Hernandez while he was crossing the street in the crosswalk on his bicycle. Mr. Hernandez and his wife, Sonia Hernandez-Montez, sued Mrs. Castro for negligence and loss of consortium. Before the trial, the parties stipulated to liability and to Mr. Hernandez's past medical expenses amounting to $789,918.92.

Mrs. Castro appeals the $19.5 million jury verdict in favor of the Hernandezes. Mrs. Castro contends the trial court erred in admitting testimony regarding Mrs. Castro's undisputed liability and testimony regarding Mr. Hernandez's financial condition. She also contends the trial court set an unreasonable, inflexible time limit for voir dire, and erred in admitting opinion testimony by the Hernandezes' medical billing expert. Mrs. Castro further argues that the damages award was excessive and the trial court erred in denying her motion for a new trial. We reject Mrs. Castro's contentions and affirm the judgment.

# II.

## FACTS AND PROCEDURAL BACKGROUND

Before the trial, the Hernandezes and Mrs. Castro stipulated to the following facts. Mr. Hernandez and Mrs. Castro were involved in a traffic collision on October 29, 2019, in Cathedral City, at the intersection of East Palm Canyon Drive and Allen Avenue. At the time of the collision, Mrs. Castro was traveling eastbound on East Palm Canyon

Drive. Mr. Hernandez was traveling northbound across East Palm Canyon Drive on his bicycle, in the crosswalk. The traffic signal facing Mrs. Castro was red at the time of the collision. The parties also stipulated that Mr. Hernandez incurred $789,918.92 in reasonable and necessary past medical expenses.

In addition, the parties stipulated to the following. Dr. Morris testified as the Hernandezes' medical billing expert regarding the reasonable costs of future care recommended by Mr. Hernandez's doctors. Had Dr. Morris completed his trial testimony, he would have testified that the reasonable cost of recommended future care for Mr. Hernandez was in the range of $5,941,928 and $7,625,866. Mrs. Castro did not agree that Mr. Hernandez needed any future treatment.

Evidence of the following facts was presented during the trial. At the time of the collision, Mr. Hernandez was 54 years old. He worked six days a week as a landscaper and gardener. After the collision, he was no longer able to participate in activities he previously enjoyed and was unable to return to his previous landscaping job for over a year after the collision. He can now only perform light work. He is in pain when working and can only work two to three days a week for five hours, at most.

Mrs. Castro was not wearing her prescription glasses at the time of the collision, did not apply her brakes until after the collision, and was travelling at 40 to 45 miles per hour. Mr. Hernandez suffered severe injuries, which included a concussion, resulting in immediate surgery, after which he was in a coma for 13 days. His injuries also included (1) tears to left knee ligaments, (2) rib and skull fractures, (3) acute traumatic brain

injuries, (4) abdomen and lower spine injuries, resulting in multiple surgeries for his injured spleen and left kidney, (5) fractures in three lumbar spinal vertebrae, and (6) neck trauma, including a cervical spine fracture and compression of the spinal cord. Multiple surgeries were required for Mr. Hernandez's spinal injuries. He spent three months in the hospital, and upon returning home, required daily assistance with his care for 10 months. Mr. Hernandez's doctors recommended Mr. Hernandez receive future medical care.

The Hernandezes' filed a complaint in September 2020, against Mrs. Castro for negligence and loss of consortium. The case was tried three years later, resulting in a jury award of $19,539,918.92, consisting of (1) $789,918.92 for Mr. Hernandez's past medical expenses, (2) $5,500,000 for his future medical expenses, (3) $3,000,000 for his past pain and suffering, (4) $8,000,000 for his future pain and suffering, (5) $750,000 for Mrs. Hernandez's past loss of consortium, and (6) $1,500,000 for her future loss of consortium. After entry of the judgment, Mrs. Castro moved for a new trial, which the trial court denied. Mrs. Castro thereafter filed the instant appeal.

## III.

## VOIR DIRE

The Hernandezes' contend the trial court abused its discretion in setting an unreasonable and inflexible time limit for voir dire. We disagree.

A. *Applicable Voir Dire Law*

Code of Civil Procedure section 222.5 states in relevant part regarding voir dire that "Upon completion of the trial judge's initial examination, counsel for each party shall

have the right to examine, by oral and direct questioning, any of the prospective jurors in order to enable counsel to intelligently exercise both peremptory challenges and challenges for cause. . . .  During any examination conducted by counsel for the parties, the trial judge shall permit liberal and probing examination calculated to discover bias or prejudice with regard to the circumstances of the particular case before the court."  (CCP §, 222.5, subd. (b)(1).)  Code of Civil Procedure section 222.5 further states that "[t]he trial judge shall not impose specific unreasonable or arbitrary time limits or establish an inflexible time limit policy for voir dire."  (CCP §, 222.5, subd. (b)(2).)  We review the trial court's limitation of voir dire for an abuse of discretion.  (*Alcazar v. Los Angeles Unified School Dist.* (2018) 29 Cal.App.5th 86, 94.)

B. *Discussion*

Here, before voir dire by counsel, 36 prospective jurors filled out a standard four-page juror questionnaire promulgated by the judicial council.  The prospective jurors also filled out a judicial council standard one-page, personal injury supplemental juror questionnaire for civil cases.  The Hernandezes' counsel, Mr. Douglass, asked the court if he could use his own questionnaire.  The court stated that it intended to give its own judicial counsel, standard questionnaire, not counsel's questionnaire, but would look at counsel's questionnaire and consider it.

After receiving the jurors' questionnaire responses, the trial judge questioned the prospective jury panel members throughout the morning for several hours and briefly

5

during the afternoon. The court's voir dire included asking jurors about their questionnaire responses.

After the court completed its voir dire, counsel for the parties conducted additional voir dire. The trial court informed counsel that each party would have 20 minutes for voir dire. The trial court added that, if counsel was "having what appears to be a good-cause challenge conversation with the jury and you're in your 20th minute and I give you your warning, I will allow you to go over the 20 minutes." The court further stated that, if one party was given additional time, then the other side would likewise receive additional time.

The Hernandezes' attorney, Mr. Fowler, told the court that he was "a little concerned" that each side's voir dire was limited to 20 minutes. He explained that he was concerned because 20 minutes to voir dire 36 prospective jurors "would seem to be very ambitious because in order to ascertain and have that limit in probing that the Court wants to find whether or not there's any bias. [¶] I had some concerns with that. I understand where your Honor is coming from with that. I was just hoping you would be open minded to us because we do want to find a fair jury and sometimes it takes longer than that. So I was wondering if you would be open minded to that?" Defense counsel, Ms. Stein, interjected, "And, your Honor, we concur with the plaintiff. We were thinking probably 45 minutes each side."

The court denied the request to increase the parties' voir dire time. The court explained that "since liability has been stipulated to, the complexity of the case, I know

there's several experts, the number of witnesses, having considered all those factors, 20 minutes is sufficient.  But as I indicated to you, Counsel, last, if you're at your 20-minute mark and I believe there is good questioning happening for that cause or even for peremptories for that matter, then you can go into the 20 minutes.  But obviously, what I give to the plaintiffs I'm going to give to the defense."  Mr. Fowler responded that, "That's all I wanted is if there was something happening, allowing us to do that limited probing."

In exercising the trial court's discretion to limit voir dire, due consideration shall be given to all of the following:  (1) The amount of time requested by trial counsel; (2) unique or complex elements, legal or factual; (3) length of the trial; (4) number of parties; (5) number of witnesses; and (6) whether the case is designated as a complex or long cause.  (CCP §, 222.5, subd. (c)(1).)

Even though, here, the trial court declared voir dire would be limited to 20 minutes per side, we conclude that under the totality of the circumstances, there was no abuse of discretion in doing so because the allotted time was reasonable and allowed for flexibility in deviation from the limit.  The court indicated that it would allow additional time if counsel demonstrated it was needed, and the other side would also receive the same amount of additional time.  In addition, voir dire included a standard four-page juror questionnaire promulgated by the judicial council, a supplemental judicial council standard personal injury juror questionnaire for civil cases, and several hours of voir dire by the trial court.  Finally, the defense did not request any additional time for voir dire or

7

state that more time was needed to address additional issues, such as bias based on a juror's marital status.

In addition, the case was not designated as a complex or long cause case. The Hernandezes' stipulated to liability, as to both negligence and causation, with a stipulated statement of facts and stipulated past economic losses (Mr. Hernandez's medical expenses). The trial issues were limited to the Hernandezes' past and future noneconomic damages and Mr. Hernandez's future economic damages. Also, the length of the trial was not exceptionally long (seven days upon the conclusion of testimony), there were 12 witnesses, including the parties, and jury deliberations lasted about a day and a half total.

Mrs. Castro argues that, because the trial court limited voir dire to 20 minutes per side, she did not have enough time to ask the 36 prospective jurors questions whether their marital status would affect their ability to award noneconomic damages for loss of consortium in an unbiased manner. But Mrs. Castro has not provided any evidence substantiating that any of the jurors were biased because of their marital status or whether it influenced their decision. Furthermore, defense counsel did not ask any questions during voir dire regarding marital status or request further voir dire time to explore possible bias based on the jurors' marital status. This suggests that it was an afterthought that was not considered of great significance during voir dire, and came to light when questioning the jurors after the trial.

Mrs. Castro argues that she established juror bias when she argued in her motion for new trial that, as a result of the 20-minute voir dire limit, her attorney did not have enough time to ask each juror about their marital status and follow-up questions to determine whether married jurors held sympathies or biases that might affect their ability to award reasonable damages. But even if defense counsel did not have time to ask each juror individually about their marital status, counsel could have, at a minimum, asked the jurors as a group whether their marital status affected their ability to be an impartial juror, particularly as to a loss of consortium claim.

Mrs. Castro's attorney, Ms. Stein, stated in her declaration supporting Mrs. Castro's motion for new trial that "[t]he jurors that were interviewed after the verdict stated that they deeply sympathized with Plaintiffs because they themselves were married. Thus, the issue of marital status was an important question." But this hearsay does not indicate who interviewed the jurors or how many were interviewed or that their sympathy resulted in bias which affected the amount of their damages award. We conclude Ms. Stein's declaration is insufficient to demonstrate juror bias or that the trial court's limit on voir dire resulted in a fundamentally unfair trial.

Even assuming the 20-minute voir dire limit was improper under Code of Civil Procedure section 222.5, it was not reversible error. As in the cases cited by Mrs. Castro (*People v. Hernandez* (1979) 94 Cal.App.3d 715, 719-720; *People v. Stewart* (2004) 33 Cal.4th 425, 457-458; *People v. Asbury* (2016) 4 Cal.App.5th 1222, 1228), she has not demonstrated prejudice or that voir dire was inadequate. Viewing the record as a whole,

9

we conclude there is no showing that the jury's composition affected the verdict and resulted in a fundamentally unfair trial. (*People v. Stewart*, *supra*, at p. 460.) There is insufficient evidence showing that any of the jurors were biased (*People v. Asbury*, *supra*, at p. 1230) or that it was reasonably probable the damages award would have been less. (*People v.* Stewart, *supra*, at p. 460.)

IV.

EVIDENTIARY ERROR

Mrs. Castro contends the trial court abused its discretion by allowing irrelevant, highly prejudicial testimony, consisting of evidence that she was not wearing her glasses at the time of the collision and Mr. Hernandez's testimony regarding financial condition.

A. *Evidentiary Admissibility Principles*

Under Evidence Code section 350, "'[n]o evidence is admissible except relevant evidence.' 'Relevant evidence' is defined as 'evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' (Evid. Code, § 210.)" (*Phillips v. Honeywell Internat. Inc.* (2017) 9 Cal.App.5th 1061, 1078.) "Generally, we review the trial court's rulings regarding the admissibility of evidence under the deferential abuse of discretion standard. . . . Appellate courts will disturb discretionary trial court rulings only upon a showing of a clear case of abuse and a miscarriage of justice. [Citation.]" (*Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 986.)

10

B. *Glasses Testimony*

Before the trial, the parties stipulated that Mrs. Castro was liable for the collision and caused Mr. Hernandez's injuries. Based on the liability stipulation, Mrs. Castro moved in limine to exclude evidence that she was not wearing glasses at the time of the collision (MIL no. 12). She argued it was not relevant because Mrs. Castro admitted liability and the evidence would result in the jury punishing her for not wearing her glasses. The trial court denied Mrs. Castro's MIL No. 12 on the grounds the evidence was relevant to show the extent of Mr. Hernandez's injuries and the jury was entitled to know foundational facts of the collision. The trial court also denied Mrs. Castro's MIL No. 5, seeking to exclude facts of the collision on the ground the jury was entitled to know how the collision happened.

Mrs. Castro argues on appeal that the glasses evidence was irrelevant because the only issues before the jury were the amount of Mr. Hernandez's future medical expenses and the amount of the Hernandezes' non-economic losses. Furthermore, the parties stipulated to the foundational facts about the collision. Mrs. Castro therefore argues the glasses evidence should have been excluded, and the evidence resulted in causing the jury to render an inflated, punitive verdict.

The Hernandezes' argue that evidence Mrs. Castro was not wearing her glasses was relevant to showing that she did not slow down before hitting Mr. Hernandez because she did not see him. This, in turn, was relevant in showing the nature of the

collision and force of impact, and consequential severity of Mr. Hernandez's injuries. We agree the evidence was relevant.

We also conclude Mrs. Castro has not affirmatively demonstrated that the glasses evidence was prejudicial. "An evidentiary ruling will not be reversed if there is no showing that excluding the evidence resulted in a miscarriage of justice. (§ 353, subd. (b); see also Code Civ. Proc., § 475 . . .) 'In civil cases, a miscarriage of justice should be declared only when . . . it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.] Prejudice from error is never presumed but must be affirmatively demonstrated by the appellant." (*Paige v. Safeway, Inc.* (2022) 74 Cal.App.5th 1108, 1127; see also *Hernandez v. County of Los Angeles* (2014) 226 Cal.App.4th 1599, 1616.)

During cross examination by the Hernandezes' attorney, Mrs. Castro testified she was not wearing her glasses at the time of the collision because she did not need to wear them while driving, and "never used them for driving." Mrs. Castro argues that the glasses evidence and related statements by the Hernandezes' attorney during opening statement and closing argument was unduly prejudicial because the glasses evidence was, in effect, inadmissible character evidence used to place the blame on her as a reckless and irresponsible person who deserved to be punished for her conduct. This, Mrs. Castro argues, resulted in an inflated, punitive damage award.

During oral argument on appeal, defense counsel for Mrs. Castro focused primarily on the prosecution's repeated references during the trial to Mrs. Castro failing

12

to wear her glasses at the time of the collision. Defense counsel argued this was improper because the parties stipulated to liability and therefore the numerous references to Mrs. Castro not wearing her glasses was irrelevant and highly prejudicial.

We conclude that Mrs. Castro has not established that the evidence and multiple references to Mrs. Castro not wearing her glasses at the time of the collision resulted in prejudicially inflating the jury's verdict. There is no evidence it had any bearing on the jury's finding of the amount of damages. Mrs. Castro stipulated to fault and liability. She also testified that the light was red at the time of the collision; she ran the red light; she hit Mr. Hernandez with her car while he was in the crosswalk; she was driving about 40 miles an hour at the time of the collision; and she did not brake until after she hit him. This conduct was equally, if not more likely to evoke the jury's passions and sympathy, regardless of whether it may have been because Mrs. Castro failed to wear her glasses, which she testified she did not need while driving.

We therefore conclude that, under the totality of the evidence, the trial court did not abuse its discretion when it allowed the glasses evidence, and there was no prejudicial error or miscarriage of justice because it is not reasonably probable that a result more favorable to Mrs. Castro would have been reached in the absence of the evidence. (*People v. Jefferson* (2015) 238 Cal.App.4th 494, 506; *Molenda v. Department of Motor Vehicles*, *supra*, 172 Cal.App.4th at p. 986.)

C. *The Hernandezes' Financial Condition*

Mrs. Castro contends the trial court committed evidentiary error by allowing Mr. Hernandez to testify, over her objection, regarding his financial condition. We conclude there was no evidentiary error.

The Hernandezes' filed an unopposed motion in limine (MIL No. 4), requesting exclusion of evidence regarding the parties' wealth or payments from collateral sources, on the stated ground that "[e]vidence showing that a party is wealthy or poor risks improperly appealing to the 'social or economic prejudices of the jury.'" (*Seimon v. Southern Pacific Transportation Co.* (1977) 67 Cal.App.3d 600, 606.) The parties stipulated to this limitation, and the trial court declined to rule on the motion on the ground such a basic legal principle does not belong in a MIL.

During the trial, Mr. Hernandez briefly testified regarding his financial condition when his attorney questioned him on the issue of mitigation of his damages. During the trial, Mrs. Castro attempted to prove that Mr. Hernandez had failed to mitigate his damages by not seeing any doctors from May 2020 to June 2023, and by not following his doctor's care recommendations thereafter. In response, Mr. Hernandez's attorney asked him why he did not go to the doctor for his pain during that time, and he replied, "[f]inancially it's not possible." Defense counsel objected and moved to strike the answer. The trial court overruled the objection and told counsel to ask his next question. Mr. Hernandez's attorney then moved on to question Mr. Hernandez about his pain and injuries.

Mrs. Castro argues the trial court erred in allowing Mr. Hernandez's financial condition testimony because it was irrelevant, improper, and appealed to the social and economic prejudices of the jury. We disagree. While, generally, evidence of a party's financial condition is improper if used solely to appeal to the social or economic prejudices of the jury (*Seimon v. Southern Pacific Transportation Co.*, *supra*, 67 Cal.App.3d at p. 606), here, Mr. Hernandez's brief testimony that he did not go to the doctor for his pain was not improper. Mr. Hernandez's attorney properly asked him why he had not gone to the doctor from May 2020 to June 2023, for his pain. Mr. Hernandez's brief response, whether true or not, was admissible as relevant to the issue of mitigation of his damages. The trial court therefore did not abuse its discretion in allowing Mr. Hernandez's testimony to stand.

V.

ADMISSIBILITY OF DR. MORRIS' EXPERT TESTIMONY

Mrs. Castro contends the trial court abused its discretion by allowing opinion testimony by the Hernandezes' medical billing expert, Dr. Morris. Mrs. Castro argues Dr. Morris was not qualified to testify as a medical billing expert and the methodology he used was contrary to law. We disagree.

A. *Applicable Law on Expert Qualification*

Under Evidence Code section 720, subdivision (a), "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates.

15

Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert."

"Whether a person qualifies as an expert in a particular case, however, depends upon the facts of the case and the witness's qualifications. [Citation.] The trial court is given considerable latitude in determining the qualifications of an expert and its ruling will not be disturbed on appeal unless a manifest abuse of discretion in [*sic*] shown. [Citations.]" (*People v. Bloyd* (1987) 43 Cal.3d 333, 357; *People v. Singh* (1995) 37 Cal.App.4th 1343, 1377.) "This court may find error only if the witness '*clearly lacks qualification as an expert.*'" (*People v. Singh*, *supra*, at p. 1377.)

B. *Qualifications*

On October 31, 2023, the court heard Mrs. Castro's MIL No. 13, requesting the court to exclude expert opinion testimony by Dr. Morris. Mrs. Castro asserted that Dr. Morris, who is a chiropractor, was unqualified to testify to the reasonableness of medical charges, and that another trial court had excluded his testimony as an expert. Mrs. Castro argued that Dr. Morris has "no specialized expertise or training as an M.D., certainly not in surgery, which is one of the opinions he is going to give."

The Hernandezes' opposed MIL No. 13, arguing that "[h]is background is that he manages medical billing companies. He helps medical offices determine what they need to charge for different services in order to make enough money to stay in business. He helps negotiate billing. He sets charges, and he's very familiar with all of the various resources that identify what typical doctors collect and charge in various regions." The

court denied MIL No. 13, concluding that Dr. Morris's background and experience demonstrated that he was sufficiently qualified to testify as a medical billing expert.

During the trial, Dr. Morris testified regarding his experience in medical billing. He stated he worked for 23 years as a "CEO, CFO, president and managing member of . . . two large-scale, multidisciplinary medical practices which specialized in spine orthopedics, pain management, and rehabilitation." He owned and operated three outpatient ambulatory surgical centers providing care "in almost every major specialty but focusing on musculoskeletal." Since 2014, he owned and operated "a health care management and consulting company that deals with medical billing, medical coding, payment calculations, medical charge calculations, patient revenue cycle, account receivable collections for thousands of medical doctors, ambulatory surgical centers and hospital systems."

Mrs. Castro argues that Dr. Morris nevertheless was not qualified because he was a chiropractor, with no specialized training or education in medical billing, and Dr. Morris's only experience was that he "simply 'puts numbers into a public website, and it spits out numbers with no basis or reliability for those numbers.'" Dr. Morris' testimony refutes this. Dr. Morris testified that, "[f]or all of [the] entities, I have firsthand knowledge of medical billing, medical coding, the industry standards for determining chargemasters, understanding the fixed variable in personnel costs that medical providers require in order to bring their service to the marketplace, and then most importantly in negotiating payments for these services through various types of payer sources." Dr.

17

Morris stated that, while managing and operating his businesses for over 23 years, his work involved "industry standards, rules, and guidelines related to medical billing and coding, and then utilizing industry standard methodologies in determining reasonable values of health care services."

Dr. Morris further stated that, as a chiropractor, he owned two large scale multidisciplinary health care practices, in which, since 2002, he "managed the billing, coding, and revenue cycles and practices of these organizations. His license as a chiropractor enabled him to open medical professional practices and gain "the knowledge, experience, training, education, and understanding costs of service." Also, in addition to his studies in chiropractic school, during the past 23 years of licensure, he "attended thousands of seminars, webinars, and participated in billing and coding forums," in which he gathered information "from national schools that educate people on billing and coding." Dr. Morris stated that he had testified in trial as a medical billing and cost expert about 90 times.

Mrs. Castro argues that on one occasion, in an unrelated unpublished case, the superior court found that Dr. Morris was unqualified to serve as medical billing expert. Mrs. Castro also acknowledges, however, that a federal district court found that Dr. Morris was qualified to testify as an expert on medical billing matters.[1] The superior court order in the unrelated case is not binding on this court (*Rittiman v. Public Utilities*

---

[1] *Flores v. United States* (C.D. Cal. Mar. 21, 2023) No. 221CV03608FWSMAA, 20223 WL 3341080, at *4.

*Com.* (2022) 80 Cal.App.5th 1018, 1043, fn. 18), nor is it persuasive authority for the proposition that the trial court in the instant case abused its discretion in finding that Dr. Morris qualified as a medical billing expert. The decision in the unrelated superior court case carries little weight, even if considered, because, according to Dr. Morris, he testified as a medical billing and costs expert approximately 90 times, and trial courts have considerable latitude to determine whether a witness is qualified to testify as an expert. (*People v. Singh*, *supra*, 37 Cal.App.4th at p. 1377.)

We conclude the trial court reasonably found, based on Dr. Morris' trial testimony, that he had "special knowledge, skill, experience, training, or education sufficient to qualify him as an expert" on the subject of medical billing. (Evid. Code § 720, subd. (a).)

C. *Methodology*

Citing Evidence Code section 803, Mrs. Castro contends the trial court abused its discretion in allowing Dr. Morris' expert opinion testimony on medical billing because his methodology for reaching his opinions was contrary to law.

Evidence Code section 803 provides in relevant part that "[t]he court may, and upon objection shall, exclude testimony in the form of an opinion that is based in whole or in significant part on matter that is not a proper basis for such an opinion." Thus, under section 803, "an opinion may be held inadmissible or may be stricken if it is based wholly or in substantial part upon improper considerations. Whether or not the opinion should be held inadmissible or stricken will depend in a particular case to the extent to which the improper considerations have influenced the opinion. 'The question is

19

addressed to the discretion of the trial court.' [Citation.]" **(**Evid. Code § 803, Editors' Notes, Law Revision Commission Comments.)

Here, Mrs. Castro argues that the foundation for Dr. Morris' opinions is flawed, not because he relied on improper matter, but because he did not take into account Mr. Hernandez's status as a Medi-Cal beneficiary. There is no evidence of this in the record. And regardless, Mrs. Castro failed to object on this ground. There was no objection that Dr. Morris failed to account for Mr. Hernandez's status as a Medi-Cal beneficiary and lacked expertise in Medi-Cal billing, such that his methodology was contrary to law.

Also, although Mrs. Castro objected in her MIL No. 13 to Dr. Morris' qualifications and methodology, no objection is made regarding Medi-Cal expertise and billing. Mrs. Castro therefore forfeited this objection by not raising it in the trial court. (*People v. Nelson* (2012) 209 Cal.App.4th 698, 711.) Mrs. Castro cannot sit idly by and then expect relief on appeal. Had she raised her objection to Dr. Morris' methodology regarding Medi-Cal, the Hernandezes' could have asked Dr. Morris to address it. (*Ibid*.)

VI.

MOTION FOR NEW TRIAL

Mrs. Castro contends the trial court erred in denying her motion for new trial, in which she argued the damages award was excessive and a product of passion and prejudice.

20

Mrs. Castro moved for a new trial on the grounds the Hernandezes' damage award of $19,539,918.92 ($17,289,918.92 for Mr. Hernandez and $2,250,000 for Mrs. Hernandez) is excessive and is not supported by sufficient evidence. The trial court denied the motion for new trial on the grounds Dr. Morris was sufficiently qualified as a billing expert; foundational evidence of liability was admissible; and the glasses evidence was relevant for foundational purposes and to show the severity of Mr. Hernandez's injuries. The court also found that its limitation of voir dire was reasonable, and that testimony regarding Mr. Hernandez's financial condition was proper because it arose during appropriate cross-examination. The court concluded Mrs. Castro received a fair trial and, although the verdict was "in the high range," it was not an excessive award.

"We review the jury's award under the substantial evidence standard and defer to the trial court's denial of a new trial motion based on excessive damages because of the trial judge's greater familiarity with the case. The amount awarded is peculiarly within the jury's discretion. [Citation.] There is no fixed standard by which we can determine that an award is excessive. We usually defer to the jury's discretion unless the record shows inflammatory evidence, misleading instructions, or improper argument by counsel that would suggest the jury relied on improper considerations. [Citation.] We will interfere only when the award is so disproportionate to the injuries suffered that it shocks the conscience and virtually compels the conclusion the award was based on passion or prejudice." (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 720-721.)

21

We conclude the trial court did not abuse its discretion in denying Mrs. Castro's motion for new trial. As discussed in the preceding sections of this opinion, we conclude that there was no prejudicial error regarding the trial court finding that Dr. Morris qualified as a billing expert and allowing him to testify. Also, as explained above, there was no prejudicial error in the trial court allowing limited evidence of Mrs. Castro's liability, limiting voir dire, and permitting minimal testimony of Mr. Hernandez's financial condition.

In addition, we conclude the verdict was not excessive. Mrs. Castro argues that Mr. Hernandez's future economic and non-economic damages are excessive, because he returned to work, did not seek additional medical care, and used ibuprofen to manage his pain. However, there is ample evidence to the contrary that Mr. Hernandez had not fully recovered, his injuries remained debilitating, he needed additional medical care, and he suffered from long term, permanent injuries that would likely require medical treatment for the rest of his life.

Furthermore, the verdict is significantly less than the $80 million amount the Hernandezes' requested. Also, the $5.5 million award for Mr. Hernandez's future medical care is less than the $5,941,928 and $7,625,866 range recommended by Dr. Morris as appropriate. We therefore conclude that the jury's verdict was not so disproportionate to the injuries suffered that it compels the conclusion it was driven by passion or prejudice. (*Mendoza v. City of West Covina*, *supra*, 206 Cal.App.4th at p. 721.)

Mrs. Castro argues that the Hernandezes' closing argument was improper, inflammatory, and misleading because it improperly appealed to the jury's passions and prejudices. She argues that the Hernandezes' closing argument, in effect, encouraged the jurors to punish Mrs. Castro for not wearing her glasses, send a message to the community not to support Mrs. Castro's conduct, and put themselves in Mr. Hernandez's shoes when determining the amount of the damages award. Because Mrs. Castro failed to raise any of these objections during closing argument, she forfeited them. (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 295-296.)

Even assuming there was error, Mrs. Castro has not established prejudice warranting reversal. (*Bigler-Engler v. Breg, Inc.*, *supra*, 7 Cal.App.5th at p. 296.) "'As to this issue, a reviewing court makes "an independent determination as to whether the error was prejudicial." [Citation.] It "must determine whether it is reasonably probable [that the appellant] would have achieved a more favorable result in the absence of that portion of [attorney conduct] now challenged." [Citation.] It must examine "the entire case, including the evidence adduced, the instructions delivered to the jury, and the entirety of [counsel's] argument," in determining whether misconduct occurred and whether it was sufficiently egregious to cause prejudice.' [Citation.]" (*Ibid*.)

Based on the record as a whole, we conclude the statements made during the Hernandezes' closing argument, of which Castro now complains, were not sufficiently egregious to cause prejudice. There is overwhelming evidence that Mr. Hernandez suffered severe, permanent, life-altering injuries requiring ongoing treatment, and that the

23

Hernandezes' lives will never be the same because of his injuries. Castro has not established that it is reasonably probable that she would have achieved a more favorable result had the Hernandezes' not made the closing argument comments she now challenges for the first time on appeal. We therefore conclude for the reasons stated above that the trial court did not abuse its discretion in denying Mrs. Castro's motion for new trial.

VII.

DISPOSITION

The judgment is affirmed. The Hernandezes' are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.